## ROAD IN WARRIORSMARK TOWNSHIP.

[HUNTINGDON Co. v. KAUFFMAN.]

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF HUNTINGDON COUNTY.

Argued April 24, 1889—Decided May 6, 1889.
[To be reported.]

1. Under the provisions of the act of May 14, 1874, P. L. 164, relating to the assessment of damages arising from the opening of roads, etc., the assessment of damages by the jury of view is conclusive, unless an appeal, review or modification thereof is provided for by the laws existing in the particular county at the time.
2. The general road law, act of June 13, 1836, P. L. 555, containing no provision for a separate review upon the assessment of damages, it is error for the Quarter Sessions, in the absence of a local or special act conferring the power, to appoint a jury of view or review for the ascertainment of damages alone: Newville Bor. Road, 8 W. 172; Durnall's Road, 32 Pa. 383; Chartiers Tp. Road, 34 Pa. 413; Spring Garden Road, 43 Pa. 144, explained.
3. The laws make no provision for the payment of the viewers, when a separate view or review is ordered upon the question of damages; the act of May 19, 1887, P. L. 139, was not intended for such purpose: it is therefore error for the court to impose the costs of such a view upon the county.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

Nos. 401, 402, 403 January Term 1889, Sup. Ct.; court below, No. 8 April Term 1887, Q. S.

### Statement of Facts.

On June 15, 1887, upon petition presented, viewers were appointed to view and lay out a public road in Warriorsmark township, from a point on what is known as Waterstreet road, on land of Attleberger's heirs, to a point at or near the forks of the road from Warriorsmark to Tyrone and Birmingham.

On September 12, 1887, the viewers reported in favor of the road and assessed the damages; $75 being allowed to the Attleberger heirs, two of whom were Mary Kauffman and Ella B. Ross, and $15 to Martin Beck. On September 17th, the report of the viewers was approved nisi.

On December 10, 1887, Mary Kauffman, Martin Beck and Ella B. Ross, filed exceptions to the report of the viewers, two of which exceptions were directed to the amount of damages allowed to them respectively. On December 12th, a petition was presented for a review of said road, and reviewers were appointed. The same day, December 12th, Mary Kauffman, Martin Beck and Ella B. Ross filed separate petitions praying the court to set aside the report of the viewers so far as it affected the damages allowed to them, and appoint viewers to assess and ascertain their damages, etc. On February 13, 1888, the reviewers appointed on December 12, 1887, filed their report, three of them in favor of the road, and three against it. On March 21st, rules to show cause were granted upon the petitions for views upon the question of damages filed on December 12, 1887, by Mary Kauffman and others.

On October 9, 1888, the matter of the confirmation of the road, as well as the rules last mentioned, came on to be heard before KREBS, P. J., 46th judicial district, who filed the following opinion:

The viewers upon the original petition report in favor of the public road prayed for, and conformably to the requirements of the act of assembly approved May 14, 1874, procured releases of damages from such of the owners of land through whose lands the road laid out passed, as they could, and assessed damages to others. To this report there was a remonstrance and an application for a review as to the necessity for the road laid out and returned in the first report. There were applications filed also, within the time, by the owners of land through whose property the road passed for review of the assessment of damages.

Statement of Facts.

The first question before us, then, is upon the first report in favor of the necessity of the road for public use, and the report of the reviewers upon that question. With this we have no difficulty. The reviewers, three of them, were in favor of the road as first reported, and three against, and therefore the original report ought to stand, and we hereby signify our opinion that the road ought to be confirmed as a public road as laid out.

We are therefore left to deal only with the application for review upon the assessment of damages. A rule was granted on March 21, 1888, in each of the applications of Mary Kauffman, Martin Beck and Ella B. Ross, to show cause why viewers to assess damages should not be appointed. We assume this means, to review the assessment of damages already made. About the right to grant this application we have no question. The act May 14, 1874, supra, provides for an appeal or review. The Supreme Court has decided that a review and not an appeal is the proper remedy, and the reviewers are therefore to be appointed under existing laws at the time of the passage of the act of 1874. This proceeding is therefore under the general road laws of 1836, and the appointment is made in conformity therewith.

A question was raised as to the effect of the confirmation absolute of the road for public use, while this question of damages remains undetermined. We do not think it affects the assessment of damages at all. No damages can accrue to the owners of land until the road is duly laid out and opened for public use. The confirmation of the road is but one step toward the opening of the road and dedication of the ground for the use of the public. It does not settle anything as to the amount of damages or the right to receive them. Prior to the act of 1874, supra, we understand that the assessment of damages was usually separate from the laying out of the road, in this county. The act of 1874 only changes the law in that it requires it to be done at the same time, but the confirmation of the road and the approval of the amount of damages are not necessarily one act to be done by the court at one time. Cases may arise where there is no objection to the road, but parties may be aggrieved in the amount of damages awarded. There would, and could be, no valid reason why the opening of the

road should be delayed until the question of damages was fought out. We are of the opinion that the question of damages may be properly heard and disposed of, without delaying the confirmation of the road, if the confirmation is one that should be ordered.

The court thereupon confirmed the road and made an order upon the application of each petitioner appointing six viewers to review the damages alleged to have been done to petitioners by reason of the laying out of the road through their lands " as reported to No. 8 April Sessions 1887, and this day confirmed, and to make report thereof to the court at the next term." [1]

On December 10, 1888, the viewers filed a report in each case, awarding damages to Mary Kauffman, $35; to Martin Beck, $10, and to Ella B. Ross, $100. On December 17th, to the report made in each case, the county commissioners filed the following exceptions:

1. The viewers were appointed without the authority of law, and they had no legal right to assess the damages sustained by the petitioner, the power to assess damages sustained by a landowner in such case being exclusively vested in the road viewers under act June 14, 1874.[2]

2. The petitioner did not sustain any damages by reason of locating said road.

3. The county is not liable for the costs of said view, and the said costs should be paid by the petitioner.[3]

Said exceptions having been argued, on January 23, 1889, KREBS, P. J., to whom the determination was referred, filed the following opinion:

The most important question raised by the exceptions was heard and passed upon by the court, upon the argument of the rule to show cause why viewers should not be appointed to assess the damages. The reasons for making the rule absolute and appointing the viewers were briefly given then. Upon this hearing upon the exceptions to the report, I am informed by a certified opinion of President Judge Barnett, of the 41st district, that I am at variance with his construction of the law upon this question. I therefore now desire to give my reasons more fully for the conclusions then reached, in the consideration of these exceptions.

Prior to the passage of the act of May 14, 1874, road views. and proceedings were had under the provisions of the road laws of June 13, 1836, both as to the number of viewers appointed, their duties and the assessment of damages. But the act of 1874, supra, changed this so far as it relates to the time of the assessment of damages and the conclusiveness of the report of the viewers on the question of the amount of damages. The assessment of damages is no longer under § 7, act of June 13, 1836, but under the act of 1874 and the remedy therein provided to parties aggrieved by the report of the viewers. Under the act of 1874, it is the duty of the viewers, if they decide in favor of the road, to procure releases from the landowners for the damages likely to be done by the opening of the road; or if this cannot be done, to assess the damages ; and their report upon the assessment of damages "may be subject to appeal, review or modification, as may be provided by existing laws in the different counties of this commonwealth."

It is argued that "the viewers were appointed without authority of law, and they had no legal right to assess the damages sustained by the petitioner." The act of 1874 is not in all particulars similar to the act of February 24, 1845, P. L. 52. The act of April 28, 1857, P. L. 338, under which Durnall's Road, 32 Pa. 383, was decided, is almost exactly a rescript of the act of 1845. The material and important difference between the act of 1874 and those of 1845 and 1857, and the law relating to roads in various counties throughout the state contained in 2 Brightly's Pur. Dig. 1519, is, that the former acts provided "that it shall be the duty of the court to examine carefully the amount of damages assessed as aforesaid ; and if the court shall be satisfied that the amount of damages assessed in any case is such that the public interest will be subserved by its payment," etc.

But the act of 1874 gives the "right of appeal, review or modification as may be provided by existing laws." It does not follow therefore that the decisions under the acts of 1845 and 1857 and like statutes, control the construction that is to be placed upon the act of 1874. But granting that they are to be considered and that the act of 1874 is to have like construction to the act of 1857, under which Durnall's Road, supra, was decided, that case and the case of Chartiers Tp. Road, 34

Opinion of Court below.

Pa. 413, and Bensalem Tp. Road, 38 Pa. 358, do not decide the point raised here. In Durnall's Road the real question was, did a private road come under the act of 1857 for view or review. C. J. LOWRIE does say however this, "hence it arises naturally that objections to the road itself or to the damages found may be a ground of review or re-review." What the court decided in Chartiers Tp. Road was, that the applicant was too late and therefore not entitled to a view or review on account of the damages awarded; that they decided in Durnall's Case that a review was a proper remedy for such a complaint and not exceptions. In the case of Bensalem Tp. Road, what Judge STRONG says, must be applied to the facts as they appear from an attentive study. There was a report laying out a road, and upon petition of Mrs. Bilbrough a review of the road thus laid out. Of course it follows that under the act of 1857 the viewers were not bound by the first view as to the location of road or damages. They did adopt the first location but assessed a different amount of damages. The court below confirmed the location and first damages, which was held to be error, and anything else in that case is mere obiter dictum.

In Spring Garden Road, 43 Pa. 144, LOWRIE, C. J., says, in speaking of Durnall's and Chartiers roads, supra, "We notice that we have been understood as saying there that under these local road laws there might be a view for damages apart from a view or review of the road. That was not our meaning, though possibly there might be some cases in which this would be proper." Why was it not their meaning? Because in neither of those cases was such a question presented, and the act of 1857 did not, as does the act of 1874, provide expressly for an appeal or review.

But we have been referred to the case of Jackson Street, 83 Pa. 328, and Magnolia Avenue, 117 Pa. 56, as ruling the question under consideration. The only question decided by those cases, is, that the act of 1874 has no application at all to streets laid out under powers conferred by statute upon the city, as was given in both instances. But what seems entirely conclusive of this case is the decision in Verona Borough, 118 Pa. 171. WILLIAMS, Justice, in closing his opinion there says: "We are unable to see any good reason for such holding, and

accordingly hold the rule to be that assessments of damages made under the general road laws are subject to review in the same manner and to the same extent in boroughs where the general road laws prevail as in townships." What are the threads that form the woof and warp of his opinion? They are that Verona Borough in 1871, when created, came under the provisions of the general road law of 1836. That under § 25 thereof which provides that "in all cases of views for any purpose mentioned in this act, the respective courts shall, on petition of any person interested, direct a second view or review for the same purpose," that assessment of damages was and is one of the purposes mentioned in the act. Now we have the act of 1874 expressly providing for an appeal or review, as may be provided by existing laws in the different counties. The general road law of 1836 applies to Huntingdon county. Judge WILLIAMS expressly declares that under § 25 of the act of 1836, reviews may be had by the landowner because of assessment of inadequate damages, and this ought to be conclusive of the case, unless we are under a serious misapprehension of that case.

It is argued every review must necessarily be a review of both the location of the road and the damages; that there can be no review of damages separate and independently of the view for location. We do not believe such to be the law under the acts of 1845 and 1857, but if true as to those, it is not the law in this case, because this case must be decided under the acts of 1874 and 1836. There is no reason that can be given that is at all of weight, under any circumstances, why, where all parties are satisfied with the location of the road and by their not objecting show their desire to have it opened, but some one landowner complains of inadequate assessment of damages, that the whole community must wait and wait until there is a review and re-review perhaps of the road, simply to settle the naked question of damages. This may be the law, but I do not believe it, and will not so decide until convicted of error by a higher court.

To the second exception we reply that it is not sustained by any evidence; no testimony has been offered in support thereof, and it is accordingly dismissed without further notice.

The third exception is as to the costs upon this review of

damages. Section 55 of the act 13th June, 1836, provided that "the expense of a view to assess the damages sustained by the owner of land taken as aforesaid for a public road shall be paid by the respective counties." But the act of May 19, 1887, P. L. 139, makes it the duty of the court hearing such proceedings, that is, "of views, reviews and re-reviews of public or private roads and claims for damages," to make such order about the payment of the necessary costs incurred as to the court shall appear right and just. Under this statute and the facts surrounding this case, it is ordered that the county pay the costs of the view of Ella B. Ross, assessing damages.

And now, January 22, 1889, exceptions overruled and report confirmed, and it is further ordered that the costs of view assessing damages be paid by the county.

The same decree was filed in each case, and exceptions thereto having been sealed, the county took these writs, assigning as errors:

1. The order appointing viewers, etc.[1]

2, 3. The overruling of the exceptions filed to the report of the viewers.[2] [3]

*Mr. L. H. Beers,* for the plaintiff in error:

1. Has the court the power, under the act of June 14, 1874, P. L. 164, to appoint separate viewers to assess damages? Under § 7, act of June 13, 1836, P. L. 555, the landowner could have viewers appointed to assess his damages within one year after a public road had been opened through his lands, but it is not questioned that this was entirely changed by the act of 1874, which in express terms repeals "all acts and parts of acts inconsistent" therewith: O'Hara Tp. Road, 6 W. N. 428. In discussing the local act of April 23, 1857, P. L. 297, of Bucks county, the third section of which is identical with the act of 1874, this court said: "there is to be an assessment of damages with every view and review, and it is to be returned as a constituent part of every report:" Bensalem Tp. Road, 38 Pa. 371. And see Durnall's Road, 32 Pa. 383; Spring Garden Road, 43 Pa. 145; Jackson St., 83 Pa. 331; Magnolia Ave., 117 Pa. 60; Newville Road, 8 W. 172.

2. If the act of June 13, 1836, is not in force, the court had

no authority whatever to put the costs of the views upon damages on the county. The act of May 19, 1887, P. L. 139, is inapplicable, and was intended only to cover such costs as are unprovided for by prior acts, such as costs of taking depositions, making surveys, etc., incurred after the report of viewers where exceptions have been filed: Tremont Tp. Road, 6 Pa. C. C. R. 7.

There was no appearance for the defendants in error.

OPINION, MR. CHIEF JUSTICE PAXSON:

These were writs of certiorari to review the proceedings in a road case. It appears that on June 15, 1887, the court below appointed viewers to view and lay out a public road in Warriorsmark township, Huntingdon county. The viewers examined the proposed route, reported in favor of the road, and assessed the damages. Their report was approved nisi. On December 12, 1887, a petition was presented for a review, and on the same day viewers were appointed as prayed for in the petition. About the same time, certainly at the same term, each of the defendants in error presented a petition asking the court to set aside the report of the jury, so far as the assessment of damages was concerned, upon the ground that said damages were inadequate, and to appoint a jury to assess the damages. It was in reality an application for review upon the question of damages. The court below appointed a jury upon each petition, who reported damages slightly in excess of those awarded by the original jury of view. The jury of review were equally divided. Three of their number were in favor of the new road; the other three were against it. Under these circumstances the court below held that the original report must stand. The costs of the three reviews upon the question of damages were ordered to be paid by the county. This order is assigned for error. The important question presented by the record is the power of the court below to appoint a separate jury to re-assess the damages.

The first section of the act of May 14, 1874, P. L. 164, provides, "That hereafter it shall be the duty of all persons appointed in the several counties of this commonwealth to view and review any public or private road or bridge, if they

shall decide in favor of locating said road or bridge, to endeavor to procure from the persons over whose land such location may be made releases from all claims for damages that might arise from the opening of such road or the building of such bridge; and in every case where said viewers shall fail to procure such releases, and it shall appear to them that any damages will be sustained, it shall be their duty to assess the damages and make report thereof, signed by a majority of their number, and return the same, together with all releases obtained, to the Court of Quarter Sessions, and the damages so assessed shall be conclusive, or may be subject to appeal, review or modification, as may be provided by existing laws in the different counties of this commonwealth."

Section 2 of said act repeals all acts and parts of acts inconsistent with the above provisions.

The prominent feature in this act is the change in the mode of assessing damages. It provides, as clearly as language can do, that the jury appointed to view and lay out a road, and also a jury of review, shall assess the damages caused thereby. To this extent the general road law of 1836 is repealed. The reasons which induced the legislature to make this change are not expressed in the act, yet it is not difficult to see why it was done. It simplifies the proceedings and makes them less expensive. This alone would justify the change. But there is another and more important reason. Under the old system, the assessment of damages was a separate proceeding, by another jury, subsequent to the location of the road by the viewers and the approval of their report. It sometimes happened that the viewers located a road where it was subsequently ascertained that the damages for opening it were so large as to be greatly disproportioned to the public necessity for the road, and the ability of the township to pay. In such cases had the jury of view also ascertained the damages they might well have hesitated to report in favor of the road. The expenses of opening a road, and the amount of damages to be paid to the landowners, are legitimate matters of consideration by a jury of view when they are called upon to decide upon the propriety of locating a road. We can readily understand, therefore, why the act of 1874 required the jury of view to pass upon both the location of the road and the assessment of the damages.

The question which confronts us here is whether there can be a review upon the matter of damages merely. Here again we must turn to the act of 1874, which provides, as already stated, that, "the damages so assessed shall be conclusive, or may be subject to appeal, review, or modification, as may be provided by existing laws in the different counties of this commonwealth." What is the meaning of this language? The plaintiff in error contends that the words "existing laws in the different counties of this commonwealth" apply only to special or local laws and not to the general road laws, for the reason that the latter are expressly repealed by the act of 1874. We do not agree to this view. The act of 1836 is repealed only to the extent of requiring the jury of view and review to assess the damages. We hold that the true intent and meaning of the language above quoted is this, that the damages ascertained and assessed by the jury of review are conclusive, unless an appeal, review, or modification thereof is provided for by the laws existing in the particular county at the time. Those laws consist of either the general road laws, if in force in the particular county, or if not in force, the local or special law which has superseded it. It was conceded that there is no local or special law upon this subject for the county of Huntingdon.

The act of 1836 contains no provision for a review upon the question of damages. The Newville Road case, 8 W. 172, rules this point. The syllabus of that case, owing to a typographical blunder, is incorrect, and is in direct conflict with the decision. It was said by SERGEANT, J., referring to the question of damages: "An adequate remedy is given to all parties interested by the power possessed by the court to disapprove and set aside the assessment for any impropriety in the jury or defect in the proceedings, and to award another view in lieu of the former. On carefully examining, however, the whole of the provisions of this act (1836) I am satisfied that the right to a review does not extend to the case of the assessment of damages. In the first place the action of the jury in these cases is not so much that of viewers (though they are directed to view the premises and are frequently termed viewers), as that of assessors of damages, which is the great object of their appointment and their main business. And in

the 80th section of the act, this distinction is apparent, where it speaks of all cases of view, review, or assessment of damages. But what is still stronger, the 54th section provides for the expense both of viewers and reviewers of roads, whether public or private; and the 55th section provides for the expense of a view to assess damages occasioned by a public or private road, but says nothing of the expense of a review for that purpose, which it is not supposed would have occurred had such a thing been intended. There is, therefore, as the law stands, no provision for paying the expenses of such review." This case was cited approvingly in Bensalem Tp. Road, 38 Pa. 368. That case was decided under a special law for Bucks county by which the jury of view were required to assess the damages. It was said by Justice Strong: "In Durnall's Road, 8 Cas. 383, it was ruled that under a statute quite similar, enacted for Chester county, objections to the amount of damages assessed by the jury may be a ground for a review. The meaning of this is that any landowner, dissatisfied with the assessment of damages, may petition for a review. Of course the review extends to the entire action of the viewers in laying out the road and estimating the damages." Durnall's Road, supra, and Chartiers Tp. Road, 34 Pa. 413, both of which were decided under local laws bearing some resemblance to the act of 1874, have been relied upon to some extent to show that there might be a view for damages apart from a view or review of the road. The opinion in each of those cases was delivered by Justice Lowrie, who said, referring to this subject, in the subsequent case of Spring Garden Road, 43 Pa. 144, that such was not the meaning of the court. The key to what the court did mean is probably to be found in the remark of Justice Strong, above cited, that a landowner who is dissatisfied with the award of damages may have a review, but the review " extends to the whole action of the viewers in laying out the road and estimating the damages." We do not think, however, either of the foregoing cases, or any of the others cited, rules this case, for the reason that the act of 1874 makes the award of damages conclusive, unless an appeal or review thereof be provided for by the existing laws in force in the particular county. There is no such law in the county of Huntingdon. It follows that it was error to grant a review upon the question of damages alone.

It was also error to put the costs of these reviews upon the county. The law makes no provision for the payment of reviewers upon the question of damages: Newville Road, supra. The act of May 19, 1887, P. L. 139, was not intended for any such purpose. The object of that act was not to interfere with such matters as were already regulated by law, such as the compensation of viewers, but to provide for such costs as were not fixed by statute, such as taking depositions, making surveys, etc., when necessary, after the report of the viewers and exceptions had been filed. It would be a strained construction of that act to hold that it authorized the court to set aside all the prior acts of assembly upon this subject, and introduce an arbitrary fee bill in regard to the compensation of viewers.

The order of the court below appointing viewers upon the petition of the respective defendants in error to assess damages, and all subsequent proceedings thereon, are reversed and set aside in each case, at the costs of the respective petitioners.