## Loyalsock Township Road (No. 1).

*Road law—Local act—Lycoming county—Vacation of road—Widening of road—Assessment of damages—Acts of February 24, 1845, P. L. 52, May 8, 1850, P. L. 713, March 24, 1868, P. L. 464, and April 3, 1903, P. L. 137.*

Under the local road laws applicable to Lycoming county independently of the Act of April 3, 1903, P. L. 137, one and the same set of jurors may vacate a portion of a township road, supply its place, widen the road throughout its length, and assess the damages.

The provisions of the Act of June 13, 1836, P. L. 555, are superseded so far as Lycoming and certain other counties are concerned by the Act of February 24, 1845, P. L. 52, May 8, 1850, P. L. 713 and March 24, 1868, P. L. 464, in so far as to permit the same jury to vacate a portion of a road, supply its place, widen the whole road, and assess the damages against the township.

The Act of April 3, 1903, P. L. 137, relating to widening or altering certain public roads does not repeal the local Act of March 24, 1868, P. L. 464, nor affect its application to a case, where the viewers report against the imposition of the costs and damages on the municipalities mentioned in the second proviso of the act of April 3, 1903.

Where road viewers in widening a road make no assessment against a street railway company on the condition that the company shall change the location of its road so as to conform to the road as widened, the condition may be disregarded as mere surplusage, and cannot be made a basis on the part of the street railway company of an exception to the report of viewers.

Argued March 10, 1904.    Appeal, No. 13, Feb. T., 1904, by Montoursville Passenger Railway Company, from order of Q. S. Lycoming Co., June T., 1903, No. 3, overruling exceptions to report of road jury.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.    Affirmed.

Exceptions to report of road jury.

The report of the jury after setting forth the names of property owners to whom damages have been awarded and the amount of the damages, concluded as follows:

All owners of property along the line of said road, whose names do not appear in the above list have been allowed no damages, it being our opinion that the damages, if any, suffered in their cases, will be offset by the benefits or advantages accruing out of the widening of said road.

We are of the opinion that the city of Williamsport and the borough of Montoursville are not as such city and borough

benefited by the altering and widening of said road, other or apart from the general benefit to the public at large, and we, therefore, assess no part of the cost thereof to said city or borough.

The Montoursville Passenger Railway Company, the Western Union Telegraph. Company, the Pennsylvania Telephone Company, and the United Telephone and Telegraph Company appeared before the viewers and protested against the widening and altering of said road, and claimed that damages should be awarded to them sufficient to reimburse them for any removal or change in their respective properties on the line of said road that may be required by reason of widening or altering of said road. We are of the opinion that all of said corporations will be benefited by the widening and altering of said road, and that the use and occupancy of said road by said corporations does contribute to the necessity of widening and altering said road; but we are further of the opinion that independently of the use of said road by said corporations, it is necessary for the accommodation of the public that the road should be widened to fifty feet, and in view of the expenses that said corporations will incur in conforming their properties to the widened and altered road, we do not think it just to assess any damages against said corporations, and we, therefore, make no such assessment, upon the condition, however, that said corporations will so change the location of their respective properties, viz : railway and poles, as to conform to the said road as widened. We further find no damages due them by reason of altering and widening said road.

In accordance with the provisions of the act of April 3, 1903, which provides that the " damages taking into account benefits conferred shall be awarded and paid according to the provisions of the act of June 13, 1836, and its supplements," we hereby award and assess the payment of said damages upon or against the county of Lycoming.

If, however, it is the opinion of the court that the county of Lycoming is not legally liable for the payment of said damages, we, in that event, assess the same to or against the township of Loyalsock.

On exceptions to the report of the jury, the court made the following order :

And now, October 13, 1903, the report of the viewers is so far modified as to eliminate therefrom that part of their report wherein the viewers say : " We hereby award and assess the said damages upon or against the county of Lycoming." The exceptions to the report of the viewers are dismissed. The court approves the opening of the road to the width of fifty feet, and orders that the same be opened to the width of fifty feet ; and we confirm the report of the viewers absolutely, and direct that the damages awarded by the viewers to the adjoining landowners be paid by the township of Loyalsock.

*Errors assigned* were in dismissing exceptions to report of viewers in making order as above.

*William D. Crocker*, with him *Addison Candor* and *C. Larue Munson*, for appellant.—But none of the acts authorize the change, vacation and widening of a road in one and the same proceeding. Such method is wholly irregular : Powelton Ave., 11 Phila. 447; Church Street, 8 Pa. Dist. Rep. 457 ; Chestnut Street, 8 Pa. C. C. Rep. 55; East Ave., 7 Lancaster Law Rev. 164.

Such a report cannot be sustained. Neither the viewers nor the court had any authority to impose conditions upon any person or corporation affected by the proposed altering or widening of the road. The only conditions allowed are those prescribed by the legislature itself : In re Road in Lathrop Township, 84 Pa. 126 ; In re Road in O'Hara Township, 87 Pa. 356.

*J. C. Hill*, with him *H. R. Hill*, *John J. Reardon* and *James B. Krause*, for appellee, cited : Krause et al. v. Penna. Railroad Co., 20 W. N. C. 111 ; In re Chestnut St., 8 Pa. C. C. Rep. 55; In re Church St., 8 Pa. Dist. Rep. 457 ; In re Powelton Ave., 11 Phila. 447.

OPINION BY RICE, P. J., October 17, 1904 :

Their report shows that the viewers did four things, subject, of course, to the approval of the court : (*a*) they vacated a portion of the road at Miller's run ; (*b*) they supplied its place ; (*c*) they recommended that the road throughout its entire length be widened to fifty feet ; (*d*) they assessed the damages.

It is urged that independently of the act of 1903, which it is claimed is unconstitutional, the road laws in force in Lycoming county do not authorize the accomplishment of these objects through one and the same set of viewers. The proper course, say counsel, would have been (1) to petition to change and vacate the old road, as provided by the act of 1836; (2) for the persons damnified to petition the court for the appointment of viewers to assess their damages under section 7 of that act; (3) after such change of location to petition under the act of 1850 to widen the changed road; (4) to ask for the appointment of viewers, under section 7 of the act of 1836, to assess the damages for such widening. We do not concur in this view.

Section 18 of the act of 1836, which conferred authority upon the quarter sessions " to change or vacate the whole or any part of any public or private road which may have been laid out by authority of law, whenever the same shall become useless, inconvenient or burthensome," declared that the court shall proceed therein by views and reviews, " in the manner provided for the laying out of public roads and highways." The manner then provided for the laying out of roads contemplated a separate view by six viewers upon the question of damages, which might be applied for by " the owner of any land through which a public road shall be opened as aforesaid," within one year from the opening of the same. But by the first section of the Act of February 24, 1845, P. L. 52, apply to Lycoming and some other counties, it is provided that the number of road and bridge viewers shall be three, one of whom shall be a surveyor, if deemed necessary. Unquestionably this section controls, whether the petition be for the appointment of viewers to lay out an entirely new road, under section 1 of the act of 1836, or to " change or vacate " under section 18, or to assess damages under section 7, or to widen under the act of 1850. But as the second, third and fourth sections of the act of 1845 relate in terms only to proceedings where viewers are appointed to " view and locate a public or private road," it is argued that as to a proceeding to " change or vacate " no change was made in the law except as to the number of viewers. It would follow from the adoption of this construction that the damages accruing to the owners

of land through which a public road may be located are to be
assessed in the mode prescribed by the act of 1845, if the pro-
ceeding is under the first section of the act of 1836, but if the
proceeding is under the 18th section of that act they are to be
assessed in the mode prescribed by the 7th section thereof.
It is appropriate in this connection to quote at some length
the remarks of Chief Justice PAXSON in Warriorsmark Road,
126 Pa. 305, as to the reasons which lead to the adoption of the
Act of May 14, 1874, P. L. 164, for, owing to the similarity of
the two acts, they seem to us equally pertinent in the construc-
tion of the act of 1845. He says : " The prominent feature in
this act is the change in the mode of assessing damages. It
provides, as clearly as language can do, that the jury appointed
to view and lay out a road, and also a jury of review, shall as-
sess the damages caused thereby. To this extent the general
road law of 1836 is repealed. The reasons which induced the
legislature to make this change are not expressed in the act,
yet it is not difficult to see why it was done. It simplifies the
proceedings and makes them less expensive. This alone would
justify the change. But there is another and more important
reason. Under the old system the assessment of damages was
a separate proceeding, by another jury, subsequent to the loca-
tion of the road by the viewers and the approval of their re-
port. It sometimes happened that the viewers located a road
where it was subsequently ascertained that the damages for
opening it were so large as to be greatly disproportioned to the
public necessity for the road, and the ability of the township
to pay. In such cases had the jury of view also ascertained the
damages they might well have hesitated to report in favor of
the road. The expenses of opening a road, and the amount
of damages to be paid to the landowners, are legitimate matters
of consideration by a jury of view when they are called upon
to decide upon the propriety of locating a road. We can read-
ily understand, therefore, why the act of 1874 required the jury
of view to pass upon both the location of the road and the as-
sessment of the damages." So here, having regard to the rea-
son which we may safely assume influenced the legislature to
pass the act of 1845, and to the familiar principles applicable
in the construction of remedial statutes, we are unable to con-
clude that they contemplated the retention of the expensive,

cumbersome and otherwise inconvenient mode of assessing the damages accruing to the owners of land through which a road, may be located, where the proceeding is under the 18th section of the act, while providing a less expensive, simpler, speedier and more convenient mode of assessing the damages accruing from the same kind of injury, where the proceeding is under the first section of the act. This result can only be reached by assuming that by the use of the words " to view and locate " in the second section of the act of 1845 the legislature intended to exclude the case of a location of a road through a man's land in the place of a road, or part of a road, vacated, for which we can find no warrant in the context, or by construing the words of the 18th section of the act of 1836, " in the manner provided for the laying out of public roads," to mean the same as if the section had declared in express terms that the manner shall be the one existing at the time of its enactment. It is manifest, however, that the intent of the legislature of 1836 was to have but one mode of procedure whether the petition should be under the first or under the eighteenth section of the act, and we are convinced that we are effectuating it, and are not contravening that of the legislature of 1845, by holding that the " manner provided for the laying out of public roads," which is to be pursued where the petition is under the eighteenth section, is the manner provided by the law in force at the time and in the county when and where the petition may be filed ; in this case the act of 1845, and not the seventh section of the act of 1836. Authority for this construction will be found in the principles enunciated in the analogous cases of Kugler's Appeal, 55 Pa. 123, and Vernon Park, Philadelphia's Appeal, 163 Pa. 70.

The act of 1836 did not confer power to widen roads. This was decided in 1843 in Church Road, 5 W. & S. 200, and again in 1848, in In re Liberty Alley, 8 Pa. 381. In the first cited case the court said : " That object appears to be unattainable by any other process than vacating and laying out anew ; and perhaps the subject requires legislation." The defect in the law pointed out in these decisions was remedied by the Act of May 8, 1850, P. L. 713, whereby the courts of quarter sessions were given power, " under the same rules and restrictions regulating proceedings for laying out and vacating public

roads, to grant the orders for widening all such roads as are
now, or hereafter may be, laid out, reserving to those persons
who may consider themselves damnified the right of submitting
their claims to a board of viewers, as is now provided in cases
of laying out roads : Provided that no road shall in any case
exceed fifty feet in width." As already pointed out, under
the procedure in laying out roads and the assessment of dam-
ages provided by the act of 1845 for Lycoming county, it was
then, and still is, the duty of the viewers appointed to view
and locate a road to endeavor to procure from the persons
through whose lands the location may be made releases of
damages, and failing in that, to assess the same and make re-
port thereof. Manifestly, therefore, the assessment of damages
caused by the widening of a road in that county is to be made
in the same manner; that is, by the viewers appointed to re-
port upon the proposed widening, and not by a separate board
of viewers appointed specially for that purpose.

The act of 1850 may well be regarded as an amendment of
the eighteenth section of the act of 1836 whereby the term
" change " as used in that section was enlarged beyond the
construction previously given to it, so as to include a widen-
ing, as well as an alteration of location of parts of the road and
the vacation of the parts supplied. There may be instances,
and this appears to be one, where both kinds of "change" are
needed in order to remedy existing inconveniencies. As the
court has power to make them, and as the procedure is the same,
why, when both are needed, one as much as the other, may not
both be made in a single proceeding even though it be conceded
that the act of 1903 is unconstitutional? This would not only
tend to the saving of expense and the prevention of delay, but
would also be advantageous for other reasons, and none of the
objections raised by the present appellant that we have thus
far considered is sufficient to compel a negative answer to the
question.

But it may be said, that, leaving the act of 1903 out of view,
the damages to the owners of land through which a road is laid
under the eighteenth section of the act of 1836 are, by virtue
of the local Act of March 24, 1868, P. L. 464, payable by the
township, whilst as to the damages accruing from the taking
of land in the widening of a road, the general law was not

changed by that act, and therefore, they are payable by the
county. Even if this proposition were to be conceded, it is
questionable, to say the least, whether it would be an insuper-
able objection to the joining of the two proceedings. But we
deem it unnecessary to discuss or decide. that question, for we
are of opinion that the proposition that in one case the damages
are payable by the county and in the other case by the town-
ship cannot be sustained.

The first section of the act of 1868 reads as follows: " That
all damages hereafter sustained by the owner or owners of any
lands, tenements and hereditaments by reason of the laying out,
altering or vacating the whole or any part of any public high-
way, road, street or alley in the county of Lycoming, shall be
paid by the township, borough or city in which such lands,
tenements and hereditaments are situate." The contention is
that the word "alter" as used in this act is synonymous with
the word "change" as used in section 18 of the act of 1836,
and that, as the latter, as used in that connection, was construed
to mean a change of location only, and not a change of width,
therefore it is to be presumed that the word "alter" was used
in the same sense in this connection. But the reason why the
word "change" was given this restricted meaning in the con-
struction of the act of 1836, will be found, we think, in this
remark of the court in Church Road, supra: "As the question
of width is determinable by the court, there seems to be no
authority to widen." It is thus seen that it does not follow,
because by reason of the context, the word was given this re-
stricted meaning in the construction of the act of 1836, that
therefore it must be given the same meaning in the construction
of subsequent road legislation, much less, that the word
"alter" was used in the same sense in the act of 1868. True,
it has been held that "the authority to alter a road is an author-
ity to substitute a new road for an old one," Millcreek Twp. v.
Reed, 29 Pa. 195, but neither that case, nor any other author-
itative decision to which our attention has been called would
warrant us in holding, that when statutes authorize the alter-
ing of highways both by changing the location and by chang-
ing the width, a subsequent statute directing how the damages
sustained by "altering" shall be paid, must be construed to
apply to the former kind of change only. The legislature

having used a term, which, in its popular acceptation and as
defined by the lexicographers, is comprehensive enough to in-
clude both kinds of change, the courts ought to give it that
construction, there being no settled rule of law affixing a dif-
ferent meaning to it, and there being nothing in the context,
or in the legislation of which the act forms a part, from which
it reasonably can be inferred that the legislature intended it to
have a more restricted effect.   We therefore concur in the con-
clusion thus expressed by the learned judge below: "We are
also fully satisfied that the word 'altering' as used in this act
of 1868 is sufficiently broad to cover the widening of a road as
contemplated by the Act of May 8, 1850, P. L. 713, above re-
cited.   Lexicographers define the word 'alter' to mean, 'To
cause to be different in some respect; to become different in
some respect or to some extent; to vary in some degree with-
out an entire change.'   These definitions would seem to us to
fully warrant the construction we have here given to the word
'altering' as used in this act."

Was this local act repealed pro tanto by the Act of April 3,
1903, P. L. 137, entitled "An act, to widen and alter, or to
widen or alter, public roads, in townships in this common-
wealth, connecting a city with a city, a city with a borough, or
a borough with a borough; and providing for the assessment of
damages, and their payment to persons injured by such alter-
ing or widening?"   This question is raised by the alternative
form of the viewer's report, whereby it was directed that the
damages should be paid by the township, in the event and that
event only, that the court should be of opinion that the county
is not legally liable therefor.   It is clear, therefore, that they
did not impose them upon the township in the exercise of the
discretion attempted to be vested in them by the second pro-
viso; indeed they recommend specifically that they be not im-
posed upon the municipalities mentioned in that proviso.   In
that event the act of 1903 declares that they shall be "awarded
and paid, according to the provisions of the act of June thir-
teenth, one thousand eight hundred and thirty-six, and its sup-
plements."   There are several acts of June 13, 1836, and many
more passed subsequently, some so-called, and others in effect,
supplements thereto.   There is grave doubt in our opinion
whether this mode of providing how the damages shall be

awarded and paid in the special class of cases mentioned in the
title is in conformity with the salutary provisions of section 6,
article 3 of the constitution.    We do not deem it neces-
sary, however, to extend this opinion by a discussion of that
question, for upon a proper interpretation of the act we think
it does not repeal the local act of 1868, nor affect its applica-
tion to a case, where, as here, the viewers report against the
imposition of the cost and damages upon the municipalities
mentioned in the second proviso of the act of 1903.    The act
does not contain the usual repealing clause, an omission, which,
while not conclusive of the question, Commonwealth v. Sum-
merville, 204 Pa. 300; Jadwin v. Hurley, 10 Pa. Superior Ct.
104, is significant as indicating the intention of the legisla-
ture.    It was not passed to carry into effect any provision of
the constitution.    It does not purport to be a revision of the
laws regulating the altering of roads either by widening or
changing location, nor does it attempt to establish a new and
comprehensive rule upon that general subject.    Hence the
principle upon which Chalfant v. Edwards, 176 Pa. 67, and
kindred cases were decided does not apply.    None of its terms
or provisions indicates a clear intent to abrogate, wholly or pro
tanto, the existing system of changing, vacating and widening
roads and the assessment of damages in counties where the act
of 1845 applies.    On the contrary, the very indefiniteness of
the language used, and the presumably deliberate omission of
a repealing clause, tend to show that the legislature had in
mind the general rule, that a general statute, without negative
words, does not repeal a previous statute which is particular
though the provisions of one be different from the other.    We
fully recognize the right of the legislature to express its will in
any form, affirmative or negative that it pleases, so long as it
does not transgress constitutional prohibitions, and the prin-
ciple that whether the question be as to the implied repeal of
a prior local or a prior general statute, the intention of the leg-
islature must control : See Rodebaugh v. Philadelphia Tr. Co.,
190 Pa. 358; McCleary v. Allegheny Co., 163 Pa. 578.    But
while the rule above stated is not an unbending one, to be ap-
plied without regard to other evidence of the legislative in-
tent, we nevertheless feel confident, from a consideration of the
act as a whole, and a view of the entire course of legislation

upon the subject, that we are more likely to carry out the actual intention of the legislature by holding that the rule applies here, than by holding otherwise.   See Morrison v. Fayette Co., 127 Pa. 110 ; Rymer v. Luzerne County, 142 Pa. 108 ; Murdock's Petition, 149 Pa. 341 ; Commonwealth v. Philadelphia & Erie R. R. Co., 164 Pa. 252 ; Commonwealth v. Lloyd, 2 Pa. Superior Ct. 6 ; s. c., 178 Pa. 308.

We therefore conclude that whether the act of 1903 be valid or not, there was ample legislative authority for the action of the viewers as described at the outset of this opinion, but that they had not authority to impose the damages awarded by them upon the county.   Under their findings they are payable by the township, by force of the act of 1868.

As the viewers reported that the appellant will not sustain damages beyond the benefits that will be conferred by the alteration of the road in the manner described, the question whether the statutes governing the proceeding contemplate the recovery of damages by a corporation having a mere easement in the highway need not be discussed.

The viewers assessed no damages against such corporations, because in view of the expenses that they will incur in conforming their properties to the widened and altered road, they did not think it just to do so, " and," to quote their language, " we, therefore, make no such assessment, upon the condition, however, that said corporations will so change the location of their . . . . railroad and poles, as to conform to the said road as widened."   Manifestly, what they call a condition is a mere nullity.  It relates to a matter concerning which neither they nor the court had jurisdiction to make any order in this proceeding, it can be given no effect in any other proceeding in which the rights and duties of these corporations may be involved, and in the event of a breach of it neither the viewers nor the court can revise their findings as to damages and impose any part thereof upon them.   There is no conceivable way in which it affects, or can affect, prejudicially the appellant, and, therefore, is not necessarily fatal to the report, but may be rejected as surplusage :  In re Road in O'Hara Twp., 87 Pa. 356.

The order is affirmed, the costs of this appeal to be paid by the Montoursville Passenger Railway Company, the appellant.