[PITTSBURG, SEPTEMBER, 1828.]

The Commissioners of Mercer County *against* PATTERSON.

IN ERROR.

The sheriff cannot call upon the county commissioners to refund the daily sum he has paid the crier of the court.
The statute of limitations would apply to such claim, if legal.

WRIT of error to the Court of Common Pleas of *Mercer* county.

*Pearson* and *Bredin*, for the plaintiffs in error.
*S. Foster*, and *Banks, contra*.

The opinion of the court was delivered by

HUSTON, J.—To *November* Term, 1826, *Nathan Patterson*, the plaintiff below, brought suit against the commissioners of *Mercer* county, and declared for money paid, laid out, and expended, &c.; and laid the assumption on the 1st of *April*, 1826. Pleas *non assumpserunt*, and *non assumpserunt infra sex annos*, and issues. *N. Patterson* had been sheriff of *Mercer* county during the years 1810, 1811, and 1812; and again during the years 1816, 1817, and 1818; and his claim was for money paid by him to the crier of the court during his respective sheriffalties.

The proof was by the crier, whose deposition was in these words:—"That *Nathan Patterson*, sheriff of *Mercer* county for the years 1810, 1811, and 1812, did pay him one dollar per day for crying the different courts of the said county during the said three years, and that *Patterson* also paid him the same sum per day as cryer for the years 1816, 1817, and 1818; also, *Patterson* paid him seven dollars at an adjudged court in the said county in the year either 1817 or 1818." Thus, there was no proof of when any part of the money was paid—I mean no express proof of the date—the last was nearest to it, and it was uncertain as to the date, which was probably ascertained by the docket.

(The Commissioners of Mercer County *v.* Patterson.)

The commissioners resisted the whole demand, on the ground that it was never due; and, if due, it is barred by the act of limitations.

It is, or must be conceded, that until within a few years no sheriff ever made any demand against the county on account of money paid a crier. The fee bills, prior to the present one of 1821, all had an item, giving a specific fee to the crier, or rather for the crier; for it is found among the fees allowed to the sheriff. The usage, however, was, not that the sheriff should settle an account with his crier, and pay him so much on every suit; but by an express or tacit understanding, the sheriff kept the fee in the fee bill, which was carefully taxed in every case, and paid the crier a stipulated sum. In addition, the crier of the court, was crier of lands sold by the sheriff, for which the fee bill allowed a sum which was always paid to the crier. And long usage has authorized the crier to receive a dollar from each attorney admitted in the court. Thus the sheriff lost nothing; he paid the crier a commutation for his ten or twelve and a half cents, and gave him the precise sum due on the sale of each tract; and the purchaser, in most counties, also gave the crier a dollar, which, with what was paid by the attorneys, made it a small office, but a desirable one; and since rotation in office has become the order of the day, one in which the appointment is, in some counties, solicited; and a new crier comes in regularly with a new sheriff: in others, some old man holds it, as it were, by prescription.

There are certain duties beside the actual crying in court, which have usually been performed by the crier; for example, he brings a pitcher of water, if wanted; the wood being provided by the commissioners, he makes the fire; he, in some counties, sweeps the court house, and when necessary, has it washed: for this latter, he is always, where he does it, paid by the commissioners. Another person is sometimes, nay, often, employed to do this: if he does it, it is because the commissioners employ him, and they pay him precisely as they would any other person. It is no part of the office or duty of the crier, and I do not understand it as any ground of the present claim.

The sheriff paid him a dollar per day, during court, as crier. By the fee bill, as it then stood, the sheriff was allowed a fee in each cause for a crier, or for each cause called in court; and he must act as crier or find one to act in his place. He has no colour for taking the fee, allowed by law for the crier, putting it in his own pocket, and calling on the county to pay the crier.

There was no understanding, either express or implied, that the county should pay the crier; no express agreement, and no usage from which one could be inferred. If he is a deputy of the sheriff, the fee bill settles the compensation; and since 1814 no court or jury can add to it. If not connected with the sheriff, or dependent

(The Commissioners of Mercer County *v.* Patterson.)

on him, the sheriff had no right to assume and pay for the county, without their knowledge, and against their will.

There has been growing for some years a strange disposition to slip a finger into the public funds. A man solicits and obtains the most lucrative office in the county, and, if it is not his own fault, lays up, from the profits of it, a handsome provision for his future life; and then he talks of certain small matters of expense incident to it, and asks the county to pay him for them. Thus prothonotaries have sued the county for the price of their printed blanks, of their pens and wafers and ink powder; and, if not discouraged, we might expect soon to see accounts by sheriffs for horse hire, and feed, &c. &c., and for salaries to deputies, &c. It is. time it was known, that every officer accepts his office with its incidents, and its legal emoluments and legal expenses, and inconveniencies; if he does not like these, let him decline the office; if he accepts it, he has no right to take from individuals, nor to claim from the county, under colour of his office, any thing not given to him by the law.

The statute of limitations was also a positive bar to the recovery. Where it is pleaded, the plaintiff must prove the *assumpsit* within six years. It will not do to prove a debt fourteen years old, was paid for the defendant's use, and then leave it to a jury to decide whether it was paid within six years.

Judgment reversed.