## Case No. 4,951.
### FORSYTHE v. BALLANCE.
[6 McLean, 562.] [1]
Circuit Court, N. D. Illinois. July Term, 1855.

Mr. Williams, for plaintiff.
Mr. Browning, for defendant.

Before McLEAN, Circuit Justice, and DRUMMOND, District Judge.

McLEAN, Circuit Justice. This is an ejectment to recover the possession of a certain lot of land in the town of Peoria, of which the defendant is in possession, under a title adverse to that under which the plaintiff claims. The plaintiff claims under Lecroix, who was an early settler in Peoria, and who claimed under the acts of congress of 1820 and 1823. The first was entitled "An act for the relief of the inhabitants of the village of Peoria," passed the 15th day of May, 1820 [3 Stat. 605]. The 1st section provides, "that every person, or the legal representatives of every person, who claims a lot or lots in the village of Peoria, shall, before the first day of October, deliver to the register of the land office at Edwardsville, a notice in writing of his or her claim, and the register is to make report to the secretary of the treasury of the evidence in support of the claim, and his opinion whether it ought to be confirmed." The register reported, among others, that Michael Lecroix claims a lot in the village of Peoria, eighty feet by three hundred in depth. And it appears from the facts in the report, that Lecroix purchased it and three other lots in 1808 or 9, very soon after which he built on the above lot a large two story dwelling house, a large store house, and other out buildings,

[1] [Reported by Hon. John McLean, Circuit Justice.]

&c., and that he continued to occupy the same until the year 1812, when the village of Peoria was destroyed by Capt. Craig, who commanded a company of Illinois militia, in the service of the United States, because his company was fired upon at night, whilst at anchor in their boats in the lake opposite the town, by Indians, who were supposed to be friendly with the inhabitants.

On the 3rd of March, 1823, congress passed "an act to confirm certain claims to lots in the village of Peoria, in the state of Illinois" [3 Stat. 787]. The first section declared, "That there is hereby granted, to each of the French and Canadian inhabitants and other settlers in the village of Peoria, in the state of Illinois, whose claims are contained in a report made by the register of the land office at Edwardsville, in pursuance of the act of congress, approved May the fifteenth, 1820, and who had settled a lot in the village aforesaid, prior to the 1st day of January, 1813, and who have not heretofore received a confirmation of claims, or donation of any tract of land or village lot * * * so settled upon and improved, where the same shall not exceed two acres, * * * shall be confirmed." A survey of the lot in question was made by the United States in 1840, and a patent was issued to the legal representatives of Lecroix. The patent recited the report of the register, that "Michael Lecroix is the inhabitant or settler within the purview of the confirmatory act of congress, 3d March, 1823, &c., and that it has appeared to the satisfaction of said register and receiver, that the said inhabitant or settler, did not, prior to the said act, receive in confirmation of claims or donations of any tract of land or village lot from the United States, and that the legal representatives of the said Lecroix, in virtue of the confirmation act aforesaid," are entitled, &c. In March, 1848, the administrator of Lecroix filed his petition to have the lot sold for the payment of debts. Lecroix, having made a will, distributed his property between his wife and children, illegitimate, but recognized by him. He died in 1821. The court of probate, to whom the petition was presented, ordered publication, as required by the statute, as notice to the absent heirs who lived beyond the state of Illinois, some or all of them living in Canada. These heirs were made defendants in the petition, as well as the legatees of the deceased. After the requisite notice was given and the necessary proceedings had, the court directed a sale of the premises in pursuance of the statute, and a purchase was made by the administrator or executor of Lecroix, who afterwards sold to the plaintiff.

The right asserted by the defendant, originated before the patent, under which the plaintiff claims, was issued; and it is insisted that the title was a gratuity, and that until the patent was issued, no right vested in the representatives of Lecroix. That in this view the title of the defendant is paramount to that of the plaintiff. In no correct sense, can this lot be considered as a gratuity to Lecroix. It is true that the early settlers at Peoria had no right to the lots they occupied. They were the pioneers in that part of the country, and encountered privations and dangers incident to such a settlement. The country became involved in a war with England, and a consequent war with the Indians on our frontier. During this contest a Captain Craig, who commanded a company of militia, in the service of the United States, being fired on by some Indians from or near the village of Peoria, on the supposition that the people of the village were friendly to those Indians, in revenge destroyed the village. This was a great outrage, and was so considered by the government, and it was bound to remunerate the sufferers. It was done, to a limited extent, by giving to them the lots which they had occupied. The act of 1820 was passed for the relief of the inhabitants of Peoria. This was a recognition of the obligation by the government, but of a more limited extent than the merits of the inhabitants required, or was suited to the dignity or justice of the government. The report was made under the act of 1820, designating the extent of the claim of Lecroix. It seems he had constructed a large dwelling house, a large store house, and other buildings, on the lots awarded to him, and this was confirmed by the act of 1823, which granted the lots stated in the report to the former proprietors. This grant recognized the consideration of the former settlements and improvements, which had been burnt by the troops under the United States. The title related back, and took effect from the settlements made. To call this a gratuity would be to apply the term unjustly, as it supposes the thing to have been done without consideration, and would exclude the remuneration which was declared and intended by the government. Lecroix died before the act of 1823, but the proof of his loss was made, and the proceedings for his remuneration were not only commenced, but nearly completed. His claim was recognized by the government, and its final confirmation can not be separated from the basis on which it rests. It was property, property which, on the death of Lecroix, descended to his heirs. This was fully recognized by the government, by the issue of the patent to his legal representatives. This was not only a pre-emptive right, which is the right of purchase, but it was an absolute right to the property,—a right sanctioned by legislative grant, which is the highest evidence of title. This lot was sold as the property of the heirs of Lecroix, for the payment of his debts. The heirs, under the statute, were made parties to the suit. The proceedings are not alleged to be void for want of jurisdiction, or any other ground.

No fraud is charged. No person but the heirs can now object to the sale, and there is nothing in this case which shows that they are not content. The purchase was made under a judicial sale, and there is no presumption that it was not fairly made.

Can a stranger to this title object to the regularity of the sale? I think not. Under the laws of the state, the title of the heirs was transferred by the sale and the deed made under it. That sale was sanctioned, and the deed made, under the direction and special sanction of a court having jurisdiction of the case. The courts of the United States follow the decisions of the state courts in construing its statutes. The defendant, a stranger to this title, which is paramount to the one under which he claims, objects to the judicial proceedings under which the plaintiff claims, when they are offered in evidence collaterally. This cannot be done where the jurisdiction of the court is unquestionable. In Grignon v. Astor, 2 How. [43 U. S.] 319, in a case where there was a sale of property by an administrator for the payment of the debts of a deceased person, the court say, "The power to hear and determine the case is jurisdiction; it is coram judice, whenever a case is presented which brings the power into action. If the petitioner presents such a case, as, on demurrer, the court would render a judgment in his favor, it is an undoubted case of jurisdiction." And, "if the law confers the power to render a judgment or decree, the court has jurisdiction; what shall be adjudged or decreed between the parties, and with which is the right of the case, is judicial action by hearing and determining it." A case so adjudged, however, erroneously, when the judgment is given in evidence, must be considered as conclusive of the matters determined. I think the legal title is in the plaintiff.

DRUMMOND, District Judge, considered the grant to the legal representatives of Lecroix as a gratuity, which could not be reached by the creditors of the deceased.