## WM. H. CLARK v. ABBIE S. LORD, et al.

1. OTTAWA INDIAN LANDS; *Death of Allottee, Before Patent Issued; Descent of Land.* Where a member of the Ottawa tribe of Indians, who, if she had lived until after the issuance of the patents of the lands reserved for the members of that tribe, would have been entitled to receive eighty acres of land, under article 3d of the Ottawa treaty of 1862, died in the fall of 1862, a few months after the ratification and promulgation of said treaty, *held,* that at the time of her death she had an inheritable estate in such lands, reserved to the members of the tribe, which descended under the laws of the state to the heirs.

2. OTTAWA INDIAN TREATY OF 1862; *Restriction on Alienation; Heirs of Allottee.* The restriction upon the alienation of lands reserved and granted to members of the Ottawa tribe of Indians, contained in the 7th article of the Ottawa treaty of 1862, do not apply to the heirs of deceased allottees.

3. EVIDENCE; *Copy of Recorded Deed.* Under section 28, chapter 22, general statutes of 1868, a duly-authenticated copy of a deed, or conveyance in writing, copied into the proper books of the office of register of deeds prior to the 31st of October 1868, is competent evidence so far as, and to the extent that, the same may be found recorded and copied in said books of record, when it is admitted by the opposing interest that the original deed is not within the control of the party producing the copy as evidence, notwithstanding any defects existing in the execution, acknowledgment, recording, or certificate of recording the same.

### *Error from Leavenworth District Court.*

ACTION brought by *Clark,* as plaintiff, against *Abbie S. Lord,* and nine others, as defendants, to quiet title to certain real estate described in the findings of fact. The action was commenced in Franklin county, but upon proper application therefor the case was sent to Leavenworth county, and tried there, by the court, without the intervention of a jury, at the September Term 1876. Upon the trial, the court below made the following findings of fact and law, to-wit:

*Findings of Fact:* 1st.—The land in dispute, viz., the east half of the northeast quarter of section 12, township 17, range 19, Franklin county, was patented on the 1st of December 1865 by the United States to "the heirs of Eliza Richardson," under and by virtue of the provisions of arti-

cles 3 and 7 of the Treaty of July 28th 1862, with the Ottawa Indians, and said patent contained the restrictions upon alienation as provided by the 7th article of said treaty.

2d.—Eleanor McCoons (formerly Eleanor Richardson) and her husband, on 17th June 1872, sold and conveyed by warranty deed, the land in question to A. J. Glover, A. L. Anderson, and Wm. H. Clark—the latter, the plaintiff herein; and the plaintiff holds quitclaim deeds of said lands, made to him by said Glover and Anderson. (Said Eleanor McCoons was the sister of said Eliza Richardson.)

3d.—The plaintiff Wm. H. Clark is in possession of said premises.

4th.—Eliza Richardson, late of Franklin county, deceased, was during her life-time an Ottawa Indian woman, and a member of the Ottawa tribe of Indians of Blanchard's Fork and Roche-de-Bouf. She was not a chief councilman, or headman, nor the head of a family.

5th.—Said Eliza Richardson died intestate in Franklin county, in the fall of the year 1862, after the Ottawa Treaty of that year had been concluded, ratified, and proclaimed. She left surviving her, neither father, mother, husband, nor child, but left one full sister, Eleanor Richardson, a member of said tribe, and one half-brother, Sha-wa-nib-no-see, or William Dragoon, who were the children of the same mother by different fathers; and Eliza's father was dead before she (Eliza) died. Said Eliza Richardson was one of the class mentioned in the 3d article of said treaty who were to receive eighty acres of land each in the Ottawa Reserve.

6th.—On the first day of December 1865, a patent was issued by the proper authorities of the United States, "to the heirs of Eliza Richardson," (named therein as grantees,) for the lands so allotted, to-wit, the N.E.$\frac{1}{4}$ of section 12, township 17, range 19, in Franklin county, being the lands described in the petition, and the same to which said Eliza Richardson was entitled under and by virtue of said treaty.

7th.—On the 19th of March 1866, the said Eleanor Richardson, as the heir-at-law of Eliza Richardson, deceased, being then of full age, and under no legal disability, for a valuable consideration, sold, and by her deed of general warranty of that date, conveyed the said lands to one William Hurr, also a member of said tribe, under whom, through several mesne conveyances, regular in form and execution, the defendant Weston Flint holds the N.E.$\frac{1}{4}$ of the N.E.$\frac{1}{4}$ of said section 12, and defendants Abbie S. Lord and Hannah

M. Haskell hold the S.E.¼ of the N.E.¼ of said section 12. The deed from Eleanor Richardson to Wm. Hurr, was duly recorded in the office of the register of deeds of said Franklin county, on the 5th of May 1868; and said conveyances from Wm. Hurr, and the said several mesne conveyances to the several defendants above named, were likewise duly recorded in said office prior to 17th June 1872, and the plaintiff had due notice of said conveyances, and all and each of them, prior to said 17th of June, and before he attempted to obtain any interest in said lands.

8th.—Said Sha-wa-nib-no-see, or Wm. Dragoon, became twenty-one years of age in the month of June 1875, and on the 27th of September 1875, he duly conveyed by his deed of warranty of that date, the S.E.¼ of said N.E.¼ of said section 12, being the south half of the lands described in the petition, to defendant Abbie S. Lord, for a valuable consideration, which deed was duly recorded in the office of the register of deeds of said Franklin county, on the 2d of October 1875; and on the 6th of July 1876, he duly conveyed by his deed of general warranty, of that date, the N.E.¼ of the N.E.¼ of said section 12, to defendant Weston Flint, for a valuable consideration, which deed was duly recorded in the office of the register of deeds of said county, on the 7th of July 1876. Said Dragoon had, before arriving at full age, executed conveyances of said lands to the plaintiff for the sum of $10, but the said sum did not remain in his possession or under his control, when said conveyances to the defendants were made, nor at any time after arriving at full age; and said last-named deeds to the defendants were intended as a revocation of said conveyance to the plaintiff, by said Dragoon, but in the deed to plaintiff by said Dragoon it was recited that the grantor was of full age; but the court does not believe that this recital was the inducement to the plaintiff to take said conveyances.

*Conclusion of Law:* The court concludes, as matter of law, from the foregoing facts, that the defendants Abbie S. Lord and Hannah M. Haskell are the owners in fee simple, and entitled to the possession of the S.E.¼ of said N.E.¼ of section 12, township 17, range 19, in Franklin county, and that the defendant Weston Flint is the owner in fee simple and entitled to the possession of the N.E.¼ of said N.E.¼ of said section 12. The said Wm. H. Clark has not, nor have said minor defendants, any estate, title or interest, legal or equitable, in or to said lands, or any part thereof, as against the

title of the said defendants above named; and the court therefore finds for the defendants Abbie S. Lord and Hannah M. Haskell, and for the defendant Weston Flint.

To which conclusions of fact and law plaintiff properly excepted, and brings the case here on error for review.

*Wm. H. Clark,* plaintiff, for himself.

*Benson & Parkinson,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: The main questions involved in this case are—*First,* Did Eliza Richardson, a member of the Ottawa tribe of Indians, who if she had lived till the 1st of December 1865 would have been entitled to a patent from the United States for the land in controversy, have, at the time of her death, in the fall of 1862, an inheritable estate in such land? *Second,* Do the restrictions upon alienation contained in the seventh article of the Ottawa treaty of 1862, apply to the heirs of said Eliza Richardson, if she had such an inheritable interest? Eliza Richardson was included in that class, who, under the denomination of "all other members of the tribe," was to receive eighty acres of land each, under article 3 of said treaty. This article is as follows:

"It being the wish of said tribe of Ottawas to remunerate several of the chiefs, councilmen, and headmen of the tribe, for their services to them many years without pay, it is hereby stipulated that five sections of land are reserved and set apart for that purpose, to be apportioned among the said chiefs, councilmen, and headmen, as the members of the tribes shall in full council determine; and it shall be the duty of the Secretary of the Interior to issue patents in fee simple of said lands, when located and apportioned, to said Indians. In addition thereto, said last-named persons, and each and every head of a family in said tribe, shall receive 160 acres of land, which shall include his or her house, and all improvements, so far as practicable; *and all other members of the tribe shall receive eighty acres of land each;* and all the locations for the heads of families, made in accordance with this treaty, shall be made adjoining, and in as regular and

26—20 KAS.

compact form as possible, and with due regard to the rights of each individual and of the whole tribe."

The treaty was proclaimed 28th July 1863. Eliza Richardson died in the fall of 1862. The patent was issued to her heirs on the 1st of December 1865, for the eighty acres in suit. Within the authorities the absolute right to eighty acres of land in the reserve passed immediately to Eliza Richardson upon the ratification of the treaty, and the title to the specific eighty acres in controversy, when selected and approved in the manner provided in the treaty, became absolute and perfect in her heirs, upon her decease. *Doe v. Wilson*, 28 How. 457; *Forsyth v. Ballance*, 6 McLean, 562. The case of the reserve, in *Doe v. Wilson*, supra, is so similar to the case of Eliza Richardson, that it is unnecessary to recite the reasons and arguments upon which this conclusion is based.

In regard to the question, whether the restrictions on alienation apply to the heirs, it is necessary to refer to the article in which they are contained. This article (7) is as follows:

"* * * And all the above-mentioned selections of lands shall be made by the agent of the tribe, under the direction of the Secretary of the Interior. And plats and records of all the selections and locations shall be made, and upon their completion and approval *proper patents by the United States shall be issued to each individual member of the tribe and person entitled for the lands selected and allotted to them, in which it shall be stipulated that no Indian, except as herein provided, to whom the same may be issued, shall alienate or incumber the land allotted to him or her in any manner, until they shall, by the terms of this treaty, become a citizen of the United States;* and any conveyance or incumbrance of said lands, done or suffered, except as aforesaid, by any Ottawa Indian, of the lands allotted to him or her, made before they shall become a citizen, shall be null and void. And forty acres, including the houses and improvements of the allottee, shall be inalienable during the natural lifetime of the party receiving the title; provided, that such of said Indians as are not under legal disabilities by the local laws may sell to each other such portions of their lands as are subject to sale, with the consent of the Secretary of the Interior, at any time."

The letter of this article limits these restrictions to the individual members of the tribe entitled under the treaty to the lands selected and allotted to them, and to whom patents are issued, or to be issued. The reservation, as to the conveyance, is personal, from the language used, and was not intended to bind the heirs of allottees. While by the terms of the treaty, the lands reserved in article 3 are inalienable in the hands of the original patentee, except as otherwise provided, on the death of such patentee they descend under the laws of the state to the heirs, and in their hands there are no restrictions on the conveyance of the lands so inherited, and they can be disposed of in the same manner and under like circumstances as the lands of other owners may be conveyed. *Farrington v. Wilson*, 29 Wis. 383. In this light, the plaintiff has no title, and no right of possession to the premises, as the restrictions did not apply to the heirs of Eliza Richardson. Plaintiff seems to concede that if the patent had been issued to Eliza Richardson in her lifetime, the restrictions would have died with her, but claims this rule has no application in this case, because, he assumes, that Eleanor Richardson received the title to the land direct from the United States by a patent. The patent was not issued to Eleanor Richardson, but to "the heirs of Eliza Richardson," and said Eleanor Richardson obtained her interest, *not as an allottee, nor as the patentee,* but by virtue of the laws of the state of Kansas, which authorized her, as an heir of Eliza Richardson, to inherit the estate of her sister. If Eliza had lived, the lands would have been allotted and patented to her. After her death, they were patented to her heirs, without naming them; and the law of the state determined who these were. Eleanor simply inherited the lands granted to Eliza during her life; and the patent is evidence of the partition of the lands, and the division made in pursuance of the treaty. The death of Eliza Richardson did not change the terms and conditions of the treaty, nor annul the grant to her; but as the patent could not issue to a dead person, it was necessarily issued to the heirs of Eliza; but such heirs

were not controlled by the restrictions applicable to the allottees and patentees. If the patent had issued to Eliza in her lifetime, her death would have abrogated the restrictions on the alienation of the land; and having issued *after* her decease, it placed the heirs in the same condition, as to their rights in the property, as if issued *before*. These restrictions should have been omitted from the patent, as they could not apply to the heirs of the allottee; and being unauthorized and unwarranted, they were void, and constitute no restraint on the conveyance of the premises. The issuance of the patent is a ministerial act; and a clause inserted therein not authorized by law, is void.

As affecting the proceedings on the trial, it is alleged as error, that the court admitted, as evidence, a certified copy of the deed of the premises from Eleanor Richardson to Wm. Hurr, of date 19th March 1866, from the register of deeds of Franklin county. This deed was recorded 8th May 1868. As the plaintiff admitted in court that the original deed was not within the control of the defendants, the court committed no error. Sec. 28, ch. 22, Gen. Stat., makes duly-authenticated copies of such instruments competent evidence. The word "*now*," contained in the first line of said section, refers to the time fixed for the taking effect of the act regulating conveyances of real estate. This was October 31st 1868. The deed offered and received in evidence was copied in the books in the office of the register of deeds of Franklin county prior to that date. The objection to it was properly overruled.

The judgment of the district court will be affirmed.

All the Justices concurring.