Opinion by
Morrison, J.,
This was an action in the form of a case stated to determine the amount of the license tax of an auctioneer in the city of Philadelphia claimed from the defendant. The case stated contains the following: “The gross receipts of the Philadelphia Auction Company during the year 1910, from commissions and other earnings, in the transaction of its business as auctioneer, amounted to $48,232.28. On or about May 6, 1911, the defendant tendered to the plaintiff the sum of $501.25 in payment of the license fee or tax due by it for the year 1911. The plaintiff refused to accept this sum in payment of the license fee or tax due by the defendant for the year 1911, and alleges that the defendant is indebted to the commonwealth in a sum equal to three per centum of its annual receipts, or $1,446.97.” Then follows the stipulation in substance, that if the contention of the commonwealth is correct, judgment should be entered for the plaintiff for the sum of $1,446.97; but if not, then judgment should be entered for the defendant. The costs to follow the judgment, and either party reserving the right to appeal to the Superior Court.
The contention of the appellant is that the Act of June 26, 1873, P. L. (1874) 332, incorporated within its provisions the Act of May 15, 1850, P. L. 772, and that although it is conceded that the latter act has since been repealed, yet it is kept alive by virtue of what is contained in said act of 1873, and, therefore, the amount of the defendant’s license or tax is to be fixed under the provisions of the act of May 15, 1850. The great difficulty about this contention is that the act of June 26, 1873, does not incorporate within its provisions the act of May 15, 1850. The act of 1873 does not say that auctioneers shall pay the license tax now paid by brokers. It does not refer to the act of May 15, 1850, in existence at that time, levying the tax upon brokers and incorporate that broker’s act, or its provisions, into the auctioneer’s act of 1873. What then does the latter act do? By referring to it, *169 we see that it simply provides: “that from and after the first day of May next, auctioneers shall be rated with merchandise brokers, and in lieu of all commissions heretofore directed to be paid by them, shall pay, in the same manner as brokers, a license tax similar to that paid by said brokers, and no other: Provided, that no auctioneer’s license shall be issued for the city and county of Philadelphia for a less sum than $500 and all former laws or parts of laws at variance with this act, or prescribing other forms, shall be and are hereby repealed.” The above quotation is all there is of the act of 1873.
Now what is the effect of this? In our opinion, it clearly means that thereafter auctioneers shall pay the same tax as brokers may be, from time to time, required by law to pay. At the time of the passage of the act of June 26,1873, the license tax paid by brokers was regulated by sec. 7 of the Act of May 15, 1850, P. L. 772, as follows: “That hereafter all stockbrokers, bill brokers, exchange brokers, merchandise brokers and real estate brokers, in each and every city and county of this commonwealth, shall be required to pay annually to the use of the commonwealth, for their respective commissions or licenses granted in pursuance of the several acts of assembly now in force relating to the same, upon their annual receipts from commissions, discounts, abatements, allowances and other similar means in the transaction of their business, three per cent.” The Act of June 7, 1901, P. L. 534, was, upon the present question, to the same effect. It is, however, conceded, by counsel for both sides of this controversy, that both of these acts (1850 and 1901) were repealed by the Act of May 7, 1907, P. L. 175, and the following was, by the latter act, substituted therefor: “That from and after the passage of this Act, all brokers, whether stock brokers, bill brokers, note brokers, exchange brokers, merchandise brokers, factors or commission merchants, real estate brokers and agents, or pawnbrokers, whether persons, firms, limited partnerships, or corporations, shall pay an annual license tax, to this Common *170 wealth, upon his, their, or its gross annual receipts from commissions and other earnings, in the transaction of his, their or its business, as follows, namely: Ten dollars by those whose gross annual receipts are less than five thousand dollars; twenty-five dollars by those whose gross annual receipts are five thousand dollars or in excess thereof, and less than ten thousand dollars; fifty dollars by those whose gross annual receipts are ten thousand dollars, or in excess thereof and less than twenty thousand dollars; one hundred dollars by those whose gross annual receipts are twenty thousand dollars and upwards.”
The act of 1907 does not in terms mention auctioneers, but the act of 1873 provides, “that from and after the first day of May next, auctioneers shall be rated with merchandise brokers and in lieu of all commissions heretofore directed to be paid by them, shall pay, in the same manner as brokers, a license tax similar to that paid by brokers, and no other.” This general language we think is necessarily applicable to the future, and until the legislature expressed some other intention manifestly makes the tax upon auctioneers subject to all legislation in regard to the license tax to be paid by brokers. The license tax to be paid by auctioneers should, therefore, be determined according to the rules of law applicable to brokers at the time it is levied. In Com. ex rel. Luden v. Kutz, County Treasurer, 6 Pa. D. R. 571, in a well-considered opinion by Endlich, J., we find the following language: “Having so declared, the statute goes on to say that such persons shall pay a license tax similar to that paid by brokers, and in the same manner in which they pay the same, and no other. In other words, the price of the privilege of engaging in the business of auctioneering shall be the payment of a sum to be ascertained by treating the applicant as a merchandise broker and requiring him to pay the same that is exacted from such a one, which sum is to be paid by the auctioneer in the same way as if he were a merchandise broker.”
But the act of 1873 provides that no auctioneer’s li *171 cense for the city and county of Philadelphia shall be issued for a less sum than $500 and as the act of 1907 does not provide for a broker’s license tax in excess of $100, the appellee, on May 6, 1911, as agreed in the case stated, tendered to the appellant the sum of $501.25 in payment of the license tax due by it for the year 1911. The appellant refused to accept this sum and alleged that the appellee was indebted to it in a sum equal to three per centum of its annual receipts, or $1,446.97. We do not understand the counsel for appellant to question the validity of the act of 1907 so far as it applies to brokers, but the contention is that the license tax upon auctioneers was fixed at three percentum by the act of 1850, which regulated the tax upon brokers at the time of the passage of the act of 1873 in regard to auctioneers, and that said act of 1850 has, by virtue of the act of 1873, in regard to auctioneers, remained unaffected by subsequent legislation reducing the tax upon brokers doing a large volume of business. We cannot agree with this contention of appellant’s counsel because the language of the act of 1873 discloses no such legislative intent.
In support of this view we refer to Kugler’s App., 55 Pa. 123. In that case it is stated in the syllabus: “The act of April 20, 1854 (P. L. 419) relating to dividing election districts, is intended as a rule for future conduct, always to be found when needed, by reference to the law in regard to township division existing when the rule is invoked.” In the body of the opinion, Strong, J., said: “In the absence, then, of any words in the proviso to the act of April 20, 1854, showing an intent to limit the procedure spoken of to those which were in force in regard to the erection or alteration of township lines, at that time, we think it must be held that the rule of procedure is to be found in the law as it is when an election district is sought to be divided.”
In Yernon Park, Philadelphia’s App., 163 Pa. 70, it was held as stated in the syllabus: “Under the Act of May 13, 1857, P. L. 489, which enacts that the courts *172 shall appoint a jury to assess damages for land taken for public parks in Philadelphia, and that 'the proceedings thereupon shall be the same and with like effect as upon the assessment of damages for the opening of streets/ the proceedings must conform to the law as it may be in regard to streets from time to time when park proceedings are begun, and not to the law as it was in 1857.”
But the principle involved here is so fully and clearly discussed by Mr. Justice Mestrezat in Guenthoer’s Est., 235 Pa. 67, that we are disposed to quote quite liberally from that opinion. Mr. Justice Mestrezat says: “In support of his position, the learned counsel for the appellant contends that the widow of a testate, electing to take against his will, is entitled only to such part of the testator’s estate as was given her by the intestate laws in force at the time of the enactment of the acts of April 11, 1848, P. L. 536, and April 20,1869, P. L. 77, on the principle that if an act adopts the provisions of a preceding act, an amendment or repeal of the latter will not extend, limit or repeal the former. The rule of construction, suggested by counsel, is uniformly recognized and enforced. If a statute specifically adopts a former statute or particular provisions of a former statute by reference to its title or otherwise, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act, but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or is clearly implied. While this general rule of statutory construction is well settled and recognized by judicial decisions as well as by text writers, yet it is equally well established as a rule of statutory construction that where the reference in an adopting statute is to the law generally which governs the particular subject, and not to any specific act or part thereof designated in the adopting act, the reference means the law at the time the exigency arises as to which the law *173 is to be applied. We have frequently recognized this distinction and applied the rule that where the reference in an adopting statute is to the law generally upon any subject, the adopting statute means the law in force on the subject at the time it is invoked: In re Vernon Park, 163 Pa. 70; Kugler’s Appeal, 55 Pa. 123. The learned counsel for the appellant apparently concedes that the latter is the proper rule of construction where the act adopts a prior procedural statute, but not a statute affecting substantial rights. We do not agree that such distinction is tenable, and have been cited to no authority that supports it. The numerous cases cited by the learned counsel for the appellant do not sustain his position. They are clearly distinguishable on the ground that the adopting act referred to a special or particular statute or to a special or local law or to a particular section or provision of another act. On reason there can be no distinction between acts relating or referring to procedure and acts affecting substantive rights. When an adopting statute refers generally to the law affecting substantive rights it evidently means that it is to be the law in effect at the time its provisions are invoked. It is the law, whatever it may be at the time the facts require its application, that the adopting act means to declare shall regulate the subject to which it relates. If, on the other hand, the adopting act declares as the law of the state any specific statute or part thereof it is equally manifest the legislature intends that the specific provisions thus adopted, and they alone, shall be the law in such cases. When therefore the adopting act declares generally that the law relating to any particular subject, and not a specific act, local or general, shall be the law regulating the subject, the legislative intent is that the adopting act refers to the law in force at the time when it is invoked. Wethinkthat this ruleof construction applies whether the former act is procedural or affects substantive rights. It has been so held in other jurisdictions: Jones v. Dexter, 8 Fla. 276; Harris v. White, 81 N. Y. 532.”
*174 We have given the able and thorough argument of appellant’s learned counsel and their authorities careful consideration, but in view of the language of the Act of June 26, 1873, P. L. (1874) 332, we cannot agree that said act was intended to or did continue in effect the Act of May 15,1850, P. L. 772.
The six judges who heard the argument of this appeal concur in the conclusion that the court below did not err in entering judgment on the case stated in favor of the defendant.
The assignments of error are dismissed and the judgment is affirmed.