## Commonwealth v. Tross et al.

*Taxation—Delinquent tax collectors—Fees—Public officers—Extortion—Criminal law—Acts of April 8, 1872, and July 20, 1917.*

1. Tax collectors may collect only such fees as are provided by law.

2. The provision of section 3 of the Act of April 8, 1872, P. L. 994, to wit, "then the same fees as are now allowed by law to constables," means such fees as constables are entitled to at the time the provisions of the act are invoked.

3. When delinquent tax collectors make a levy and advertise, but the tax and costs are paid without sale, under the provisions of the Act of July 20, 1917, P. L. 1158, they are entitled to collect and receive as fees: Levy, $1; advertising, $2.50; sale, $1; for receiving and paying over money paid after a levy, without sale, $1.50.

Motion to quash indictments for extortion. Q. S. Cambria Co., June Sess., 1925, Nos. 309, 310 and 311.

*Robert C. Hoerle,* Assistant District Attorney, for Commonwealth.

*P. J. Little* and *Percy Allen Rose,* for defendants.

REED, P. J., Orphans' Court, specially presiding, June 25, 1925.—The above-named defendants were indicted for extortion and the cases came on for trial at the June Sessions, 1925. A jury was empaneled, but before it was sworn, counsel for defendants moved that the bills be quashed for the reason that the allegations set forth therein did not constitute any crime under the Commonwealth of Pennsylvania, and it appearing that there were no disputed facts to be determined by a jury, and the only matters to be decided were questions of law, the cases were continued until June 22, 1925, when the questions involved were fully argued by the Assistant District Attorney, Robert C. Hoerle, Esq., who represented the Commonwealth, and by P. J. Little, Esq., and Percy Allen Rose, Esq., who represented the defendants.

There were certain matters pertaining to these actions which were conceded. The first was that all of the defendants are *de facto* tax collectors for the County of Cambria, and that as such they received duplicates for the collection of delinquent taxes of said county under section 3 of the special act of assembly "relative to the collection of taxes in the County of Cambria," approved April 8, 1872, P. L. 994. This section of the said act of assembly reads as follows:

"In case any state, military, county or poor tax assessed in any township

Commonwealth *v.* Tross et al.

or borough within said county shall remain unpaid for a period of thirty days from and after the first day of September aforesaid, it shall be the duty of the Treasurer of the said County of Cambria to issue his warrant under his hand, accompanied by a schedule of all such unpaid taxes, adding thereto 5 per centum, and the names of the persons respectively to whom the same are charged,·in the proper duplicates, directed to the constable of the proper township or borough, or if there be no constable therein, then the treasurer shall appoint some suitable freeholder, whose duty it is hereby made to receive the same, authorizing and requiring him to demand and receive from the persons named in the schedule the sums with which they are charged respectively; and the said warrants shall further authorize and require such constable or collector, in case any person named in the schedule annexed shall fail to pay the amount with which such person is therein charged, after demand therefor made by such constable or collector, to levy the same by distress and sale of goods and chattels of such delinquent, giving ten days' public notice of such sale by three written or printed advertisements; and in such case the constable or collector shall be entitled to retain out of the proceeds of such sale, after first deducting the taxes, the same fees as are now allowed to constables by law for a levy and sale upon a writ of execution: Provided, where the said taxes are paid on demand, or within ten days thereafter, the constable or collector shall be entitled to receive as a compensation of 5 per centum for his services."

After the duplicate showing the delinquent taxes were handed to the above-named defendants, they proceeded to collect taxes against the delinquents therein named, and after demand duly made, the taxes still being delinquent, they distressed the goods and chattels of said delinquents, giving proper notice, and before the property of the taxables was actually sold, the delinquents paid the taxes and the costs demanded by the defendants, and among the items of costs exacted from the delinquents was an item, "for receiving and paying over money paid after a levy, without sale, $1.50."

The Commonwealth contends that the tax collectors had no authority in law to demand and receive this money, and that, having done so, it was an extortion on their part. While it is contended on the part of the defendants that the demanding and receiving of this money was only the legal fee that they are entitled to under the laws of this Commonwealth.

A tax collector's compensation is fixed by the legislature, and the only fees that he is entitled to are those as set forth in the act of assembly in such cases made and provided. In 29 Cyc., 1422, under the heading of Rights, Powers, Duties and Liabilities of Officers, referring to compensation in fees, the law is thus stated: "An office, as has been shown, is not a contract. The rules of law relative to contracts do not, therefore, apply to the official relation. But the powers, duties, rights and liabilities of officers are to be governed by that branch of the law spoken of as the law of officers. One of the rights which, by that law, is commonly credited to officers is the right to compensation, fees or emoluments, where provision is made by law for such compensation. It follows from this rule that officers have no claim for official services rendered, either against the government, a legal corporation or an individual, where no provision has been made by law for compensation for such services, and that the performance of the duties gives the *de facto* incumbent of the office no claim to the official compensation."

In the case of Lehigh County *v.* Semmel, 124 Pa. 358, it was held that: "Public officers who are paid salary by fees take and hold their office *cum onere*, and they can claim no compensation for any service not specified or

Commonwealth v. Tross et al.

provided for in the fee bill. It is well settled that they cannot be paid out of the public treasury without statutory warrant therefor: Mercer County v. Patterson, 2 R. 106; Irwin v. Commissioners, 1 S. & R. 505, and Wayne v. Waller, 90 Pa. 99. In some cases a rule may operate harshly, but the remedy, if any is needed, rests with the legislature alone. The courts have no power either to make or amend fee bills." See, also, Rothrock v. Easton School District, 133 Pa. 487, and Albright v. Bedford County, 106 Pa. 582.

Therefore, in order that the tax collectors may collect the fees alleged to have been taken by the Commonwealth, the burden is on them to show that the laws of Pennsylvania have provided that such a fee may be collected.

The Act of 1872 provides that the constable or collector shall make a demand for the taxes, and if the taxes are paid on demand or within ten days thereafter, he shall receive his compensation of 5 per centum of the taxes for his services. If a taxable be still in default, the collector shall levy the taxes by distress and sale of goods and chattels of the delinquent, and in case of sale he shall deduct the taxes first, then the same fees as are now allowed by law to constables for levy and sale upon a writ of execution.

It is contended on the part of the Commonwealth that these collectors were not entitled to any fees other than the 5 per centum as referred to in the proviso of said act, unless they had made an actual sale and received the taxes and their fees out of the goods levied upon and sold. In other words, that a delinquent taxable may refuse to pay his taxes, cause a collector to give notice, make levy, advertise, levy and do everything as provided in the act of assembly but make the actual sale, and then, just before the goods are sold, pay his taxes with a 5 per cent. penalty added, and thus avoid any further costs. This court does not believe that the wording of the Act of 1872 warrants any such conclusion.

It is the duty of courts to construe acts of assembly so as to effectuate the intention of the legislature. The legislature is never presumed to have passed an act of assembly creating a hardship or an inconvenience. In other words, as said in the case of Com. v. Fraim, 16 Pa. 163-169: "Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and, when discovered, it ought to be followed with judgment and discretion in the construction, though that construction may seem contrary to the letter of the statute. It is said a thing within the letter of the statute is not within the statute unless it be within the intention of the makers, and such construction ought to be put on it as does not suffer it to be eluded: People v. Utica Ins. Co., 15 Johns. Rep. 358, 381; 8 Bac. Abr., title Statutes, 247."

And in the case of Umholtz's License, 191 Pa. 177-181, it is stated: "All legislation, especially that which regulates proceedings in the courts, is of a broader and more comprehensive scope and is couched in more generic language than is employed in the drafting of private contracts, and requires an interpretation conformable to its general purpose. Thus, statutes are to be so construed as best to effectuate the intention of the legislature, though such construction may seem contrary to the letter: Com. v. Fraim, 16 Pa. 163; Com. v. Monongahela Nav. Co., 66 Pa. 81. All laws must be executed according to their sense and meaning which they imported at the time of their passage: Com. v. Erie & North East R. R. Co., 27 Pa. 339. A remedial statute is to be extended to cases in equal mischief: Lehigh Bridge Co. v. Lehigh Coal and Nav. Co., 4 Rawle, 9."

In Lancaster County v. Frey, 128 Pa. 593-599, it was held: "It falls within the province of the courts to correct a merely clerical error, even in an act of

assembly, when, as it is written, it involves a manifest absurdity and the error is plain and obvious. The cases in which this power has been exercised are collected in Endlich on Statutes, par. 319, and it is unnecessary to refer to them in detail. The power is undoubted, but it can only be exercised when the error is so manifest, upon an inspection of the act, as to preclude all manner of doubt and when the correction will relieve the sense of the statute from an actual absurdity and carry out the clear purpose of the legislature."

On the other hand, as stated in the case of City of Philadelphia v. Ridge Avenue Pass. Ry. Co., 102 Pa. 190-195: "It is undoubtedly true that 'when a statute is clear and explicit, and its provisions are susceptible of but one interpretation, its consequence, if evil, can only be avoided by a change of the law itself, to be effected by legislative and not judicial action. It is not allowable to interpret what has no need of interpretation; this rule is cardinal and universal:' Sedgwick on Construction of Statutes, 194."

And in the case of Riley v. Pennsylvania Co., 32 Pa. Superior Ct. 579-585, President Judge Rice said: "We are not unmindful of the principle that where the words of a statute are plainly expressive of an intent, not rendered dubious by the context, the interpretation must conform to and carry out that intent, and that it matters not, in such a case, what the consequences may be. But it is equally true that the manifest injustice, the hardship or inconvenience that would result from one possible interpretation of the words may be considered, amongst other things, in determining the legislative intent, where the words are as plainly open to an interpretation that would lead to a different result and still not defeat the general purpose of the enactment."

Having in mind, therefore, the principles as laid down in the above cited cases, and applying the same to the provisions of the Act of Assembly of April 8, 1872, P. L. 994, the court believes that the only reasonable construction that can be placed upon the wording of this act is that a delinquent tax collector is entitled to "the same fees as are now allowed to constables by law for levy and sale upon a writ of execution," providing all of the provisions, as required by the Act of April 8, 1872, P. L. 994, leading up to a distress, levy and sale, have been complied with by the collector of taxes.

The next question to be considered is what fees the collectors are entitled to under the provisions of the Act of 1872, wherein it is stated: "The same fees as are now allowed to constables by law for a levy and sale upon a writ of execution."

It is contended by counsel for the Commonwealth that if any fees are allowed to the delinquent tax collector, they should be such as were provided for constables under the Act of March 31, 1865, P. L. 26, that being the act in force in this Commonwealth at the time of the passage of the Act of April 8, 1872, and the district attorney particularly emphasizes the word "now" in said act and argues that that refers particularly to the Act of 1865, thus making said act a part of the Act of 1872.

In the case of Guenthoer's Estate, 235 Pa. 67-73, the Supreme Court, referring to the adoption of the provision of a preceding act by another act of assembly, stated the rule as follows: "If a statute specifically adopts a former statute or particular provisions of a former statute by reference to its title or otherwise, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act, but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or [it] is clearly implied. While this general rule of statutory construction is well settled and recognized by judicial decisions, as well

as by text-writers, yet it is equally well established as a rule of statutory construction that where the reference in an adopting statute is to the law generally which governs the particular subject and not to any specific act or part thereof designated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied. We have frequently recognized this distinction and applied the rule that where the reference in an adopting statute is to the law generally upon any subject, the adopting statute means the law in force on the subject at the time it is invoked: In re Vernon Park, 163 Pa. 70; Kugler's Appeal, 55 Pa. 123. The learned counsel for the appellant apparently concedes that the latter is the proper rule of construction where the act adopts a prior procedural statute, but not a statute affecting substantial rights. We do not agree that such distinction is tenable, and have been cited to no authority that supports it. The numerous cases cited by the learned counsel for the appellant do not sustain his position. They are clearly distinguishable on the ground that the adopting act referred to a special or particular statute or to a special or local law or to a particular section or provision of another act. On reason, there can be no distinction between acts relating or referring to procedure and acts affecting substantive rights. When an adopting statute refers generally to the law affecting substantive rights, it evidently means that it is to be the law in effect at the time its provisions are invoked. It is the law, whatever it may be at the time the facts require its application, that the adopting act means to declare shall regulate the subject to which it relates. If, on the other hand, the adopting act declares as the law of the State any specific statute or part thereof, it is equally manifest the legislature intends that the specific provisions thus adopted, and they alone, shall be the law in such cases. When, therefore, the adopting act declares generally that the law relating to any particular subject, and not a specific act, local or general, shall be the law regulating the subject, the legislative intent is that the adopting act refers to the law in force at the time when it is invoked. We think that this rule of construction applies whether the former act is procedural or affects substantive rights. It has been so held in other jurisdictions: Jones *v.* Dexter, 8 Fla. 276; Harris *v.* White, 81 N. Y. 532."

Several other cases were cited by counsel for defendant which sustain the position that where a reference in an adopting statute is to the law generally upon any subject [the reference is to the law] at the time it is invoked: Kugler's Appeal, 55 Pa. 123; In re Vernon Park, 163 Pa. 70; Loyalsock Twp. Road, 26 Pa. Superior Ct. 219, 224; Com. *v.* Phila. Auction Co., 51 Pa. Superior Ct. 166-170; 41 S. W. Repr. 1094-1097; 20 Kansas, 390.

In fact, we believe that counsel for the Commonwealth concedes the rule as given by the above authorities to be the law of this State, but he contends that, inasmuch as the wording of the act of assembly contains the words "the same fees as are now allowed to constables by law for levy and sale upon a writ of execution," it puts this case in the class of statutes specifically adopted by reference to the title or otherwise. We do not think that this position is tenable or that any such meaning could be read into the language of the act. We cannot conceive that the use of the adverb "now" in the Act of 1872 could be such a direct or specific reference to the Act of 1865 as would warrant us to come to the conclusion that that act was adopted by referring to it as "a special or particular statute or to a special or local law or to a particular section or provision of said act," and if it did not, then it referred generally to the law that would be in effect relating to the fees of constables at the time its provisions were invoked. We do not find a Pennsylvania case squarely on

Commonwealth *v.* Tross et al.

this proposition, but we do find the case of City of St. Louis *v.* Dorr et al., 41 S. W. Repr. 1095-1097, wherein Judge Sherwood, in a very able and well considered opinion, in a case somewhat similar to the one at bar, states the law as follows: "But it was said, in effect, in the case under comment, that the words, to wit, 'now provided by law or the charter of said cities,' etc. (two of which words were italicized), caused the real character of the act to appear, and thus turned that which otherwise would have been a general into a local or special law. The learned judge, when writing this opinion, seems to have forgotten his brief filed in Herrmann's Case, 75 Mo. 341, wherein he said, touching the point in hand: 'Law is made theoretically not for a day but for all time.' If this is the correct theory on which and by which a law or charter is to be construed and its force and effect determined, then assuredly the provisions in laws or charters in existence when the law of 1893 was passed or went into effect might well apply to cities which then were governed by a law or charter, but which did not then possess the requisite population, and so could await the necessary increase in that respect. In a word, the law of 1893 provided for and anticipated the wants of the future and could not be, and should have been, balked of its manifest purpose, nor be regarded as a local or special law from the mere fact that such purpose by then existent laws or charters was in the future, as occasion might require, to be effectuated. . . . And in this connection it is proper to state that the adverb 'now' does not necessarily mean 'at the present time.' This view finds illustration in Clark *v.* Lord, 20 Kan. 390, where the statute provided that 'all instruments of writing now copies,' etc. This act was approved Feb. 20, 1868, and notwithstanding this, it was held that the word 'now' referred to the time when the act regulating conveyances of real estate took effect in the subsequent October. . . . This desire of carrying out the intention of the legislature by enlarging or restricting the meaning of certain words is abundantly illustrated in many text-writers and reports. You can scarcely go amiss of them. Thus, in Kugler's Appeal, 55 Pa. 123, an act allowed an appeal by words of general reference, the same as another act, the only one which allowed appeals; and thereupon it was said that the words in the case provided for by the earlier act were intended 'as a rule for future conduct—a rule always to be found when it is needed by reference to the law . . . existing at the time when the rule is invoked.' . . . All laws are presumed to be intended to operate prospectively and not otherwise, unless language to the contrary be expressed or the implication of such intention from the language employed be indubitably clear. This is the inflexible and universal rule."

In view of the above cited opinions, we hold that a fair interpretation of the language used in the Act of April 8, 1872, relating to "the fees as now allowed to constables by law for levy and sale upon a writ of execution" means such fees as constables were entitled to at the time the provisions in this act were invoked and the fee bill of July 20, 1917, which fixed, regulated and established the fees to be charged by constables was in effect at the time the delinquent tax collectors made a levy and collected the sums set forth in the indictments, and the fees under said act were as follows: Levy, $1; advertising, $2.50; sale, $1; for receiving and paying over money paid after a levy, without sale, $1.50; and, inasmuch as all of the indictments against the above named defendants charged them with accepting the sum of $1.50 for receiving and paying over money paid after a levy without a sale, it follows that the defendants are not guilty of extortion and that no crime has been set forth in the indictments; therefore, the motion to quash each of said indictments is sustained.     From Henry W. Storey, Jr., Johnstown, Pa.